ORAL ARGUMENT NOT TO EXCEED 15 MINUTES PER SIDE MR. HAYBURN FOR THE DEFENDANT APPELLANT CROSS-APPELLATE Morning, Your Honors. May it please the Court? John Hayburn for County Attorney John Burlew. I'd like to reserve three minutes for rebuttal. Plaintiff John Doe decided to challenge Kentucky Senate Bill 249 on its face. That decision, as the Supreme Court has said, comes at a cost. These challenges are very hard to win and require a searching inquiry of how the law applies to non-parties. Because Doe failed to meet this heavy burden, this Court should vacate the preliminary injunction. Any challenges to this new law should proceed in the normal course, case by case. Doe decided not to bring an as-applied challenge here. But if he did, it would have no likelihood of success on this record. The Court granted relief eventually only to Doe. He granted relief just to Doe. Yeah. So why wasn't that, in some respects, as-applied relief? Because it was quite a bit narrowed. I think there's a difference between the claim that he brought, which was a facial claim, and then the relief that the Court afforded. So the Court said that at page ID 238 that Doe brought a facial claim, that he says that he brought an as-applied change, but that's just not supported by the record. But then the relief, even for a facial claim, relief still has to be party-specific. So I think even though we disagree with the Court on the merits, as to the scope of relief, I think the Court did the right thing because still, in a facial claim, relief has to be party-specific. Now, the higher up the appellate food chain a plaintiff goes, the more a ruling on the merits of a facial claim begins to look like universal relief or broader relief. But still, I think functionally, an injunction has to be party-specific. This Court has said that in L.W. Commonwealth v. Biden in a number of cases. And I think if there's any dispute about whether Doe brings a facial claim, his complaint, particularly paragraphs 51 and 67, frame both of his claims in facial terms. His litigation strategy below was premised on bringing a facial claim. I would point you, the Court, to the class certification papers in the record at docket number 13. He argued that there was commonality among the prospective class members because he was bringing a facial claim, they were all bringing a facial claim, therefore, everyone was bringing the same claim. And he sought to expand the injunction, the scope of the injunction in this Court based on the facial claim. As I mentioned in my opening, this comes at a cost and is a heavy burden that Doe has to meet. Even in the preliminary injunction posture, a plaintiff needs to establish a record of burdens on speech to non-parties. Doe v. Reed, the Supreme Court's case, is clear on this point. That case came to the Supreme Court on appeal of a preliminary injunction. And one of the prime reasons the Court gave for rejecting the facial claim there was that the plaintiffs had focused only on the burdens on their speech as it relates to the particular petition that they signed. That's at pen site 200 of that. What about, is it Packingham, North Carolina v. Packingham? So that case suggests, it didn't differentiate, like I thought you had some good hypos, whereas stats suggesting that most people don't speak on social media. But Packingham did not draw these distinctions. It just suggested that a broad ban on social media, for whatever reason, was a violation of the First Amendment under the whatever time, place and manner rules or whatever. So why wouldn't that suggest that there is a First Amendment right to, I suppose, just use social media generally even if you don't want to speak on it? The key point about Packingham was that it was a ban on using social media. And this, if anything, is a burden. But under your analysis, wouldn't it be the same that you would ask, well, is the ban excessive? And we have to look at how many people use social media, not for expressive purposes, but just to review things, stay in touch with family and a bunch of other things. And the court didn't seem to do that. It would be a similar analysis. I mean, the court applied intermediate scrutiny and that's what we're asking the court apply here. But because the burden was so much heavier there, it was a complete ban on speech on using social media. The balancing between the government's interest in the burden was out of lack. Here we have a much lighter burden on speech, just as strong of an interest, but a much lighter burden because SB 249 only requires that convicted child predators put their name on a social media account. So not their username, but just somewhere on their account. That, for some, doesn't really implicate the First Amendment at all, as we discussed in our brief. An individual, for example, who just has a Facebook account and doesn't use it to post, this doesn't chill their speech at all. Did you make that argument before the district judge? Because the opinion reads as if this signature needs to be on every posting. I didn't see where you... Did you argue that? I know it's in your brief, in your reply, but was that an issue? We didn't argue it, and it's clear of terms here. We preserved our objection to Doe's over-breath claim. And so you can waive issues, but not strains of arguments. So I think we've clearly preserved our argument against Doe's facial claim, and our brief on appeal has emphasized different things that we didn't get to emphasize below. Did you argue that the record was insufficient? We argued, again, that Doe's facial claim, that he hadn't met his burden of establishing entitlement to a preliminary injunction based on a facial claim. I don't know if we used the same language that we're using on appeal, but I don't think there's a dispute that we've preserved the broad issue challenging his facial claim there. And going to the evidence of burdens on third parties that Doe was required to put into the record, there's really only two pieces of evidence in the record. There's the complaint that's partially verified, but it's verified only as to Doe's allegations about himself and his family. And so that's his verification at Record 11-3. And then there's an expert report that he submitted at Record 11-2, but that focuses on recidivism rates generally for sex offenders and harms that stem from sex registry laws. And his expert actually noted, at paragraph 25 of that report, that there aren't any studies about these sort of Internet restrictions. So I think the Court can look at the record and say that there really is no evidence of burdens on third-party speech. I'm somewhat confused by the burdens here. So I take it it's the government's burden in most free speech cases. If it was strict scrutiny, I know it would be the government's burden. I think it would be the government's burden to prove the required test, important government interest, and substantial relationship, even under exacting scrutiny. So how does that burden relate to the facial burden? So there's a facial claim in which you're suggesting that the challenger actually somehow bears the burden of showing facial, but the government actually has the burden, I think, under First Amendment case law of proving exacting scrutiny is met. What's the relationship? I think in this context, first a coronary injunction where the plaintiff has the burden of showing his entitlement to extraordinary relief and bringing a facial claim means that whatever is the burden in other postures, the burden is... Well, I can say for a fact that the Court has said, even in the PI context, if it's strict scrutiny, if the plaintiff satisfies the burden of showing that speech is at issue, then the government has the burden of showing that it likely can meet its test. So I don't think the PI context matters. But I do think if it's a facial claim, maybe it somehow is different. I think it is different under a facial claim. Moody is now the definitive case on what the standard is and what the burdens are for a facial challenge. And Moody is pretty clear that the plaintiff has the burden of showing that not just the laws on constitutional rights apply to the plaintiff, but in a substantial number of its applications. And the Court went on at some length about how the plaintiff needs to, first, analyze the scope of the law, and then, second, suss out what its constitutional applications are and its unconstitutional applications. And only if there is a lopsided ratio of unconstitutional to constitutional can a plaintiff succeed on that facial challenge. I'd say even if the government has some initial burden, I think we've met the burden of showing that there is a very significant interest here. As a matter of law, this Court and the Supreme Court have said that protecting children, particularly in this evolving context of the Internet, is one of the most compelling interests that there are. And I think... But the rubber is going to hit the road when tailoring, right? So whatever the test is, I know there's different formulations, but whether there's a reasonable fit, the response would be everybody agrees that's an important interest, but a ban on having sex offenders talk to children would be the reasonable fit to deal with that. I think it is narrowly tailored. For one, the law applies only to sex offenders who are convicted of committing crimes against minors. So it's a subset of sex offenders. And the list of crimes that would subject you to this Act is all very serious crimes, kidnapping, rape, child sexual abuse material. It also applies only to social media. There's some cases in other jurisdictions requiring the disclosure of Internet identifiers, which is a much broader concept and would include things like email and chat room usernames. The General Assembly here took care in providing a very narrow, tightly defined definition of social media. So it would exclude many things like blogs or chat rooms. Certainly email is specifically excluded. And again, the disclosure is required on the user's account, not their handle or username. So I think it's different in several ways from a case like Buckley with the name badge requirement where the disclosure is not contemplating us in real time with speech. But even if it were, I don't think that would be an issue for us. In Citizens United, the disclaimer requirement that TV ads and campaigns have to say, this ad is paid for by, was also a real time disclosure. How is that reconcilable with McIntyre? Both of them are about political speech. Is the current state of the law that you can engage in physical leafleting, but you can't engage in television leafleting? I see my time's running out, but I'll briefly answer. The court treats in-person communications differently than electronic communications. So this would be on the electronic side, I suppose. And you read McIntyre, Talley, Watchtower Bible, the cases involving sort of one-on-one face-to-face communications or handing out of handbills, it's a more sensitive form of speech. And the burden is much lighter when you're on social media. And the interest is higher for reasons Justice Alito said in his concurrence in Packingham, of just the dangers of social media and how much more difficult it is to monitor a child on social media versus in person in the real world. Thank you. You'll have your full rebuttal. OK, we'll hear from counsel for John Doe. Good morning, Your Honors. May it please the court, Guy Hamilton Smith for John Doe. SB 249 threatens to do, as a matter of practicality, that which our First Amendment forbids as a matter of law. On page 14 of Mr. Belew's reply brief, he says that when a law bans an entire category of protected speech, the facial analysis is very straightforward. I believe we're relying on this Court's opinion in Speed v. Shewitt. And we totally agree. That's exactly what SB 249 does. Anonymous speech is protected speech. And we're living in an era where anonymity is becoming more, not less, critical to free expression, as our online environments are increasingly marked by desires for vengeance and for retribution, for even the expression of an unpopular opinion to say nothing of one's status as someone required to register as a sex offender and their home address being made publicly available. This law violates Mr. Doe's rights both facially and as applied. And I am here today asking this Court to affirm the injunction, but to modify its scope to apply statewide, as Mr. Doe himself is still not afforded complete relief under this injunction, as he risks arrest and prosecution should he venture outside of the Davies County line. And furthermore, it is right, given the constitutional underpinnings of the overbreadth doctrine, for this Court to expand the injunction. If it is a facial challenge, it does seem like the District Court didn't consider a lot of potential applications. It's not obvious to me that there is a right to anonymous social media use that is separate from a right to anonymous speaking. And if there is evidence that lots of people use social media not for expressive purposes, why wouldn't it be perfectly constitutional as applied to those people? Well, I think there's a few things to unpack there, Your Honor. The first being that the Supreme Court's, of course, recognized in both Packingham and citing Reno that the First Amendment applies both to the Internet generally, and then also in what the Court termed the modern town square in Packingham. As far as anonymous speech, whether there's an independent, stand-alone right to anonymous speech, decisions of the Supreme Court and this Court, I believe in Judge White's opinion and signature management team, that anonymous speech is paramount to protect the rights, the political speech of persecuted groups. And so those two things taken together, whether or not this is strict scrutiny, which we contend that it is, or some lower level of scrutiny, as Judge Gibbons recognized in, I believe, Libertarian Party, you can still get to strict scrutiny depending on the First Amendment burdens. So do you think that the First Amendment would even apply? So was your response that the Supreme Court has already said that the First Amendment categorically applies to anonymous social media use without any expression? So you just want to browse? Oh, I'm sorry, Your Honor. I meant to address that point as well. I think the First Amendment additionally covers the right to receive information, and it's, as I argue in the brief, it's about whether or not someone chooses to speak on a given day. That's not necessarily, in my view, what the First Amendment is safeguarding. It's safeguarding choice. So if a person chooses to want to speak, then that's where the analysis falls. They don't have to speak every day, but by not speaking, they don't forfeit their First Amendment right to do so, would be my position. So that would suggest there's a right to receive... So there's a right to potentially speak is one argument I think you made, and then a right to receive information. But even if there is a right to receive information, is there any case that has suggested there's a right to receive information anonymously? Because McIntyre was a case clearly about anonymous leafleting. It seems to me like this case is closer to Citizens United than McIntyre because of the online nature of it. That could well be, Your Honor, but the reality is that this law is not just about political speech. It's a very broad law that encumbers any sort of speech. But that hurts your case. Political speech is the speech at the core of the First Amendment. That would be the speech that's most entitled to First Amendment protection. And the court in Citizens United said there's no right to anonymous electioneering during a political campaign. Well, I think it... I mean, this law encumbers political speech as well. So I don't think that a legislature could somehow fare better if they were targeting political speech by passing a law that would say this law encumbers any speech, regardless of what it is. So how would you distinguish Citizens United? It upheld a disclosure regime for those speaking in television during political campaigns. It strikes me that the First Amendment would be at its apex in that scenario. And the court said it was sufficient, dating back to the earlier Buckley case, not the 1999 Buckley case. Right, Your Honor. I would say that the way to distinguish it is in this context. People who are required to register as sex offenders versus, for example, corporations or whoever, are singularly despised. And as the Supreme Court recognized in Talley v. California, anonymous speech is a time-honored tradition in this country. It goes back to the publication of the Federalist Papers. I think that your point there would be, if there's a threat or something, that that's a lot of these right to association or right to be anonymous, like the NAACP cases. I see the instinct that it would be threatening. But the court didn't engage in that analysis. That would be almost an as-applied claim, that if I disclose my name, I personally will be attacked. But that's not in the court's facial opinion, facial analysis opinion. Your Honor, I believe that's correct. But here, we're bringing both facial and as-applied claims. That's in the complaint where Doe's specific use of social media is set out, where Mr. Doe talks about he's open about his past conviction, and he engages in what the Talley courtroom addressed as dissent and advocacy. And he's received harassment for the basis of doing so. And if he's required to identify himself, which is the purpose of this law, he's not going to be doing that anymore. And so I think that in that as-applied context, that would be the way to distinguish it. And furthermore, there's no case that I'm aware of, including the case that Mr. Berlusz cites in his reply brief that withdraws the right to anonymous speech, or the special emphasis placed on unpopular groups in the case of SOAR registrants. And our position is that strict scrutiny in this case would apply, because it being a content-based restriction on speech, Citizens United notwithstanding, given that the Supreme Court also acknowledged in McIntyre that it expresses no viewpoint discrimination. People can say whatever they want, but nonetheless, they applied strict scrutiny. And then lower courts, following the Supreme Court's lead in Miller and Jaynes in Georgia and Virginia, also applied. Do you think McIntyre applied strict scrutiny? I'll grant you the Court has not been perfectly clear on what is and is not strict scrutiny, and what is exacting scrutiny's relationship to strict scrutiny. But as best as I can tell, to these disclosure obligations, they have been, and I think the Bonta case is the one most recent, Americans for Prosperity, where the Court suggested that there's this exacting scrutiny that's a little bit below strict scrutiny, because you've seen an important interest rather than a compelling interest, and substantial relationship rather than least restrictive means. It seems to me that that is the most analogous case law. What would be your response to that? You're right, Your Honor, that the Supreme Court has not been extremely clear, but the analysis in McIntyre would be most closely fit with strict scrutiny. However, again, as I mentioned earlier in Judge Gibbons' opinion in Libertarian Party, depending on the First Amendment burdens, which this is not as much of the disclosure regime, whereas people are being able to provide the government with information that could be used to later identify them, they're having to identify themselves to the public, so it's fairly analogous with the Buckley decision. And that places unique burdens on First Amendment, which was recognized by this Court in Libertarian Party. So I think that whether you want to call it strict scrutiny, whether it's exacting, with the sliding scale analysis, I think we arrive at the same place. But even under intermediate scrutiny, we still win. Buckley, I thought, the 1999 Buckley, the one about petitioning, in some respects that might help your friends on the other side, because the Court invalidated a requirement that you identify yourself to the people for whom you are petitioning. But as part of its reasoning, the Court said those individuals already have to identify themselves to the public in documents that they submit to the government. And those documents that they submit are public records. In some respects, that's analogous to this case, because you don't actually have to identify yourself in any particular message. All you have to do is identify yourself on your account. And so it does require extra work for an individual who wants to go find your identity. So why wouldn't that analogy fit? Well, I think, Your Honor, it's really a distinction without difference. I mean, for the first time in their third brief, they rose to this argument about it doesn't have to be in the username, but on social media people click through to the profile, and there it is. Because the whole point of the law, according to the government, is to be able to allow the public to identify people. If now they're saying, no, it doesn't actually do that, then what's the point of the law other than to impose gratuitous First Amendment burdens? But back to your question, I mean, I think the distinction here is, I believe, the other Buckley case, Buckley v. Vallejo, it's the reasonable probability standard. It's a very low standard to have to meet that a person has to put on a reasonable probability of threats, harassment, violence, which we've done, both with Mr. Dozone's experiences, both with the expert declaration and the record recounting the instances of vigilantism, violence, harassment, even homicides of people on the registry and their family members. And so I think that's where... So is the actual sex offender registry, does that have pictures? Yes, Your Honor. So could you make the same argument about MacIntyre if your client wanted to engage in leafleting? He, in some respects, can't do that because his picture is now online on the sex offender registry. So would your argument here extend to invalidating the entire sex offender registry because it now profiles everybody and so nobody can speak anonymously? I'm not sure, Your Honor. I mean, I think that, going back to the MacIntyre decision, I think that the way that they viewed it was that it essentially, in MacIntyre, the Ohio law forced the individual to, you know, reveal the contents of their own thoughts in connection with a specific writing. There may be some overlap there. I think that courts who have considered compelled speech challenges in this context with respect to registrants, particularly driver's license challenges, have found that there is a compelled speech violation there. And so I think there's perhaps some overlap, but it's just not an argument that... Has anybody raised that argument? I'm just curious. Not to my knowledge, Your Honor, but maybe I will next time, you know. But as I was... I'm running out of time, so I'm just going to try to hit a few of my big points here. Even under intermediate scrutiny, given the Packingham decision, we win, because that was a North... It was a ban on all speech. This is a ban on one category of protected speech, and that significantly burdens all speech in what the court called the modern town square. It's facially overbroad, and as I said, as Mr. Berlew argued in the briefing, when it is a categorical ban, the facial analysis is very straightforward. That's what the district court did here. It bans an entire universe of speech to target a very narrow scope that is already heavily criminalized under Kentucky law. And as what the Doe v. Prosecutor decision in the Seventh Circuit observed, this is the right way to provide deterrence without offending First Amendment freedoms. And in that context, SB 249 simply imposes massive burdens on the First Amendment for people who, in the Packingham court stated, are just trying to reform and live law-abiding and meaningful lives. Lastly, as I said, Mr. Doe is still subject to arrest and prosecution under the present injunction, so I'm asking the court to expand it. As the court stated in Virginia v. Hicks and Broderick v. Oklahoma, overbreadth assumes injury to third parties. In this court, in Sharp v. Curitin, and more recently in Scarametti and Kentucky v. Biden, no one has said that it is an Article III prohibition, rather that it is a rare feature of the federal law, but when necessary, it is within the power of the federal courts to do so. And here it is necessary because, amongst other things, the Scarametti decision from this court articulated that plaintiffs offered no reason why they could not bring a class action and get the same relief. But this court's decision in Fox v. Saginaw County means that we have no ability to do so, and this is the only way that we can get that. So I see that my time is up. If the court has no further questions, I thank you for your time. Thank you. We will hear rebuttal. Judge Murphy, you mentioned at the outset of my friend's argument that the district court just didn't consider the range of applications, and I think that's an important point to make, because if you look at Moody, which got to the Supreme Court on an appeal from a PI, none of the parties argued about the facial standard all the way through that litigation, but the court still vacated the preliminary injunction below because the district court and the court of appeals didn't conduct a proper facial analysis. So there's kind of two flaws here, one in Doe not building his record, and second, in the district court not conducting a proper analysis. What is your preferred remedy, then? Would it be to do the exact same thing as Moody? Moody has come out and clarified the law and then remanded for the district court to engage in the appropriate analysis? Or would it be for us to do it on this record? Vacate the injunction, say that on this record, Doe hasn't shown that SB249 is facially unconstitutional. And the district court granted relief based on the facial challenge, so Doe mentioned that he brought an as-applied challenge. We contend, as I mentioned earlier, that he did not, but even if the court were to consider an as-applied challenge, it's just not supported in the record. How do you think the law fits in the threat idea? That has been a part of the analysis in this area. So the NAACP, the famous case about disclosing your membership lists, a lot of that was tied to the obvious threats that would have occurred with those disclosures. And there is some evidence of threats in the record, at least against Mr. Doe himself. So where does that fit into the constitutional analysis? Is it at all in the facial over-breath, or is it somewhere else? It fits in. And the allegations are mostly conclusory in the record, I would say. There's no concrete examples of threats or harassment or anything of the like. And in cases like NAACP, when courts have dug into whether there's a chill and a burden on speech, they've held hearings, they've had witnesses, there's been evidence that a party would be, that their speech would be burdened. And so here, we don't have anything like that beyond conclusory allegations, and then really nothing as it relates to non-parties. The court, you know, in Doe v. Reed, this court, in Glenn v. Holder, and in Husted, have looked for this sort of concrete evidence. In Glenn v. Holder, the court said that the record is utterly barren of, you know, burdens on third parties. And in Husted, the court said that the record can only be described as scant when it comes to burdens on speech. And in conclusion, I would just note that this law is narrowly tailored. It's exceptionally important for parents in order to keep their children safe in an evolving world of social media. Kentucky's General Assembly was not content to just punish after the fact. It wanted to give parents tools in order to keep their kids safe online.